### John H. EMERSON
v.
### NATIONAL CYLINDER GAS COMPANY
and Stanton Scientific Equipment Co.

Civ. A. No. 54-900.

United States District Court
D. Massachusetts.

Oct. 17, 1955.

See also 135 F.Supp. 271.

Robert Thompson, Boston, Mass., for plaintiff.

Herbert Kenway, Boston, Mass., and Richard D. Mason, Chicago, Ill., for defendant.

ALDRICH, District Judge.

■ This is an action for patent infringement, previously before this court in 131 F.Supp. 299, in which the defendants now move for summary judgment. Accompanying the motion are various affidavits and exhibits. The plaintiff has filed counter-documents which in some measure contradict defendants'. In order to succeed on this motion, accordingly, defendants must show that all contradictions or explanations, either already of record, or suggested by counsel during argument, are immaterial or incompetent, and that undisputed matters of record are so unambiguously plain that contradiction or explanation is not permissible and as matter of law show no possibility of recovery.

In view of the amount of material on file this is rather a large order. It has led, without deciding who is to blame, to considerable recrimination between counsel. I start with the thought that a matter calling forth so much contradiction both on the record and between counsel, not to mention requiring nearly 150 pages of briefs, is presumptively not one for summary judgment.

The plaintiff claims infringement of patent 2,468,741, for a resuscitator, applied for on December 12, 1944 and issued May 3, 1949. A resuscitator is a device which alternately fills the lungs with air or oxygen and empties them when the patient is unable to breath himself. On November 9, 1942, plaintiff applied for a patent on a resuscitator in which the face mask, the valves and the "motor" were all contained in one unit small enough to hold in the palm of the hand. All else needed was a flexible tube and a supply of gas under pressure. On December 12, 1944, this earlier application was granted as patent 2,364,626.

Prior to this time resuscitators had been heavy, cumbersome affairs in which the mechanism was too large to hold in the hand and was separate from the mask. The 626 patent's improvements accomplished marked ease in portability, and hence in simplicity of operation and general utility.

In May 1943, more than a year before the 741 application, plaintiff sold a device embodying the subsequent 741 patent to the British Air Commission for experimentation. He did not appreciate that this constituted an "on sale." His attorney learned the facts and realized the consequences after initiating the present suit. Since then plaintiff has filed a disclaimer of all of the claims of the 741 patent, except claim 9. He contends that claim 9 was disclosed in the 626 application—though not claimed— and hence is entitled to that earlier date and is not effected by the 1943 sale. 35 U.S.C.A. § 120.

The defendants deny that claim 9 was disclosed in the earlier application, and say that if it was, the 741 patent is void for double patenting. They assert, even more fundamentally, that their device does not infringe 741.[1] This depends

1. I wonder why if defendants' double patenting claim is sound this may not merely mean they are in jeopardy of violating 626 instead of 741. No one, however, raised this point. In the course of the argument I approached it obliquely.

"The Court: If there had been an alleged infringement of the 626 patent by the manufacture of a device which was similar in every respect, except that it did not have that valve * * * which admitted air into the tube, and which is why I believe they call it the "economy device". * * * What would be your position as to whether * * * that would be an infringement or not? (The thrust of this question is that 741 is like 626 minus the economy device.)

"Mr. Mason: I can't answer that question emphatically. I know that as to claims 1, 3 and 4 of the 626 patent, you would have no infringement, your Honor, because they are specifically limited to that 'economy' feature. It is my recollection that claim 2 is only indirectly limited to that feature in that it calls for four valves; but I do not believe that it specifically calls for the 'economy' feature, if we may term it that, that is, the entrainment of air from the atmosphere

upon consideration of the doctrine of equivalents, which defendants counter by alleging file wrapper estoppel. These two principles have additional bearing on the case, as will be subsequently developed.

The 626 patent disclosed a device having two positions, which may be called inhalation (by the patient), and exhalation. On inhalation gas under pressure entering the device passes through a nozzle into a venturi tube and draws with it air from the outside, and the combination of gas and air passes through the motor chamber and out the mask into the lungs. The air from outside entered initially into a chamber 62 and reached the venturi suction chamber through a tube 61. When the lungs are filled the pressure builds up in the motor chamber, tripping a mechanism which operates two reciprocating valves. One closes the aperture from chamber 62 to the outside and opens one between that chamber and the motor chamber. The other causes the gas, which continues to enter the device through the venturi nozzle uninterruptedly, to stop flowing into the motor chamber, and to pass instead to a now-opened exhaust valve. The combined result is that what was forced into the lungs is now drawn back, by the gas flowing through the venturi, through the mask, the motor chamber, the same chamber 62 and tube 61 into the venturi suction chamber and expelled outside. When the lungs are emptied a further

drop in pressure occurs inside the motor chamber which trips the mechanism back to its original position, reversing the two reciprocal valves, producing inhalation and the whole operation is repeated.

The arrangement by which air entered from the outside to mix with the gas during inhalation was subsequently named the economy feature. Patent 741 is similar in all respects to 626 except that this feature was omitted. This simplified the device mechanically. The omission of the outside air valve eliminated chamber 62, and on exhalation the lung content passes from the motor chamber to the venturi directly through the tube, here called tube 49, instead of through chamber 62 and tube 61.

It could be found that defendants' device was in all respects similar to patent 741 except that defendants enlarged the casing and used additional solid material (a casting), so that instead of tube 49 the passageway from the motor chamber to the exhaust venturi was a tunnel within the casing. Defendants say that this tunnel was made by drilling, and was not a tube.[2] Plaintiff says that this is a distinction without a difference. I will not say as matter of law that he is wrong. Indeed, although I understand he now says the admission was inadvertent, defendants' counsel appeared to me to admit as much at the hearing.[3] Defendants' real contention on the tube versus other form of passageway controversy,

in the gas stream which flows into the patient's lung."

2. For reasons discussed at the hearing I will reject as untimely defendants' affidavit to that effect then offered, but I assume that defendants are correct for the purposes of this opinion.

3. "The Court: Now it may be I am anticipating but do you go so far as to say that if you were to decide that you did not mind increasing the weight, perhaps if you had some new metal that didn't weigh as much, and instead of a tube you substituted a solid that was drilled out, that this change in the language meant you could do that?

"Mr. Mason: That is a very good question, your Honor. My answer to that is it's not the tube; it's the specification that the end of this element—

whatever we call it—is fixed in an opening in the wall of the second element.

"The Court: That will save me a lot of trouble because I would have had some difficulty in expressing that that must be so" [The reporter's notes show "Balance inaudible." While it is of no great moment, my memory is that I added, "but it does seem that it should be, and that you must concern yourself with another aspect."]

"Mr. Mason: That's the difficulty with the interpretation in your query. You have got to have two elements before you can have the end of one fixed in an opening in the other.

"The Court: Yes; and we are agreeing as I understand it, there is no special sanctity in the word 'tube.'

"Mr. Mason: Quite correct." [The other aspect was then discussed.]

at least on this motion, must be not that it is not equivalent, but that plaintiff is barred by file wrapper estoppel from asserting that it is.

 Plaintiff's drawings submitted as part of his application for patent 741 showed tube 49, but his claim, instead of describing it as a tube, described it as "means within the casing defining a duct." The patent office rejected this specification as "not readable." This was, of course, technically correct. But if this was, as I hold it could be, a purely mechanical difference of no functional importance, and the rejection was not made because of any difficulty or objection of substance, such as lack of invention, infringement, or double patenting, it was a purely formal matter, and plaintiff's amendment substituting the words "a tube" for the seven words above quoted did not raise an estoppel against thereafter asserting equivalence in a matter of substance. Reece Button-Hole Mach. Co. v. Globe Button-Hole Mach. Co., 1 Cir., 61 F. 958. Therefore it could be found that defendants infringed patent 741, unless that patent is invalid.

 This same reasoning disposes, at least for this motion, of defendants' "other aspect" referred to in note 3, supra, namely that even if tube 49 in 741 is equivalent to defendants' drilled passageway within the casing, tube 49 cannot be equivalent to tube 61 and chamber 62 in patent 626. Defendants point out that tube 49 is described as going directly to the motor chamber, and tube 61 goes only to 62, the outside-air valve chamber. But if a tube can be the equivalent of a passageway, then a tube plus a passageway can equal a passageway. It is true that valve chamber 62 is something more than a passageway on inhalation, but on exhalation, which is

when tube 49 comes into play, the outside valve is closed, and tube 61 plus chamber 62 lead directly, as one passage, from the motor chamber to the venturi tube just as does tube 49.

 Defendants argue that even so this invention was not disclosed in 626. On the present record I am unable to determine the answer to this question. It seems to me that this inability is supported by the colloquy quoted in footnote 1, supra, and that my then reply [4] is appropriate here. I will not rule as matter of law that a single device cannot include and disclose two inventions for purposes of 35 U.S.C.A. § 120, even though only one of them is claimed.

What has already been said is also sufficient to dispose of defendants' point of double patenting.

It follows that defendants' motion for summary judgment must be denied.

---

It seems to me this is entirely logical. The functional feature is the passageway, and the size, shape and thickness of its walls would seem of secondary, or no importance. If plaintiff had obtained a third patent, like 741, but with a drilled casing instead of a tube, and had sued these defendants for its infringement, I can scarcely imagine them not asserting double patenting.

4. "Mr. Mason: [After his statement quoted in note 1.] Does that answer your question?

"The Court: If you say you don't know whether it answers it or not, [more exactly I should have said, "If you say your reply doesn't answer it,"] you can hardly ask me whether it does or not."