UNITED STATES of America,
Plaintiff, Appellant,

v.

P. J. O'DONNELL & SONS, Inc.,
Defendant, Appellee.

No. 5031.

United States Court of Appeals
First Circuit.

Dec. 13, 1955.

Melvin Richter, Washington, D. C., Attorney, with whom Warren E. Burger, Asst. Atty. Gen., Joseph Mainelli, U. S. Atty., Providence, R. I., and Herman Marcuse, Attorney, Washington, D. C., were on brief, for appellant.

Walter H. Sharkey, Woonsocket, R. I., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

In the spring of 1947 the Naval Supply Depot at Newport, Rhode Island, issued a so-called Sales Catalogue inviting bids for the purchase and removal of two lots of food refuse, one meat scraps and fats and the other bones, to be produced at the Newport Naval Base during the one-year period from July 1, 1947 to June 30, 1948. The first page of the catalogue

is divided into paragraphs with separate marginal titles. The third title and paragraph reads as follows: "Time and Place of Sale: 11:00 a. m. (EDST) Monday, June 16, 1947, Naval Supply Depot, Newport, Rhode Island." A deposit of $500 was required with each bid which would be returned to the successful bidder in the form of a credit against the last payment due under the contract. Under the heading Submission of Bids it was provided among other things that: "All bids to be considered must be received or sent in time to be received at 11:00 a. m. (EDST), June 16, 1947." The Government reserved the right to reject any or all bids, to waive defects in bids, and to withdraw any lots of refuse from sale prior to acceptance of a bid with respect to that lot. Under the heading Withdrawal of Bids, it was provided: "Bids may be withdrawn prior to the bid opening by the delivery of written or telegraphic notice of withdrawal prior to the opening. The withdrawal of a bid after the opening will entitle the Government to retain the deposit." In the event of breach the Government reserved the right to terminate the contract, resell the material, charge the purchaser with any loss it might suffer, and retain any deposit in its hands "on account of said loss."

On June 12, 1947, P. J. O'Donnell & Sons, Inc., submitted a bid for both lots of food refuse advertised for sale and sent a certified check for $500 with its bid. The bid and check were received in due course, and on June 19 the Supply Officer in command at Newport notified the O'Donnell company by letter that its bid had been accepted. The O'Donnell company asserts that it did not receive this letter of acceptance until June 23, but however that may be, its president wrote to the Supply Officer on June 27 that the contract would not be performed. This letter reads in material part: "We were awarded the contract on two lots offered in sales catalogue No. B–68–47. We find that we will be unable to fulfill the terms of this contract and consequently, we wish to withdraw"

On receipt of this letter the Supply Officer at the Naval Station on July 1st awarded the food refuse contract to the next highest bidder. At the end of the contract period it charged O'Donnell with the difference between the amount actually received for the refuse from that bidder and the amount which would have been received had O'Donnell performed its contract, less O'Donnell's $500 deposit and less also another deposit of $510 made by O'Donnell in connection with a separate contract awarded to it for the purchase and removal of food refuse from the Quonset Point Naval Air Station at Quonset Point, Rhode Island, which O'Donnell had satisfactorily performed. O'Donnell refused to pay and the United States brought the instant suit in the court below to recover damages in accordance with its claim.

The O'Donnell company in its answer asserted that no contract had ever come into existence for the reason that its bid had not been seasonably accepted by the Government. Wherefor it averred that the Government's recovery was limited to the $500 deposit and that it was entitled to return of the $510 deposit retained by the Government under the Quonset Point contract for which it filed a counterclaim.

The case was submitted to the court below on an agreed statement of facts and exhibits. That court found the defendant's argument persuasive and consequently concluded that the Government was not entitled to the relief for which it asked and that O'Donnell was entitled to recover $510 on its counterclaim and for its costs. Judgment was entered in accordance with these conclusions and the Government took this appeal.

The District Court rested its decision on the time and place of sale provision of the catalogue quoted at the outset of this opinion. It recognized that this provision could not be construed literally as importing an actual sale of the food refuse on June 16, 1947, for the refuse was not then in existence but was to be produced over a one-year period beginning on July 1, 1947. But it said that

the only possible meaning of the provision which could have been contemplated by the parties was that a contract for the sale of the refuse would be made at the time and place specified. Then, construing the phraseology of the catalogue strictly against the Government which had chosen it, the court said that the Government had obligated itself to accept the defendant O'Donnell's bid, if it accepted the bid at all, on June 16, 1947. Hence it concluded that the acceptance of the bid three days later on June 19 was too late to be effective with the result that no contract ever came into existence.

■ We think the District Court overstressed one provision of the catalogue to the exclusion of others. This we think constituted a violation of the cardinal rule that the provisions of a contract are not to be construed separately as isolated items but that the parts of a contract are to be read together as related elements of a unitary business undertaking to the end that the meaning of the parties to the transaction may be ascertained with as much certainty as circumstances permit. So read, we think the provision relied upon below does not support the conclusion there reached.

The words of the time and place provision of the catalogue were not happily chosen. Literally they import, but, as the court below recognized, they could not mean, that an actual sale of food refuse described would occur precisely at the time and place specified. Nor do we think that they mean that a contract for the sale of the food refuse would be entered into precisely at the time announced, for that view makes the provision inconsistent with other stipulations in the catalogue.

The time set for the so-called sale was 11:00 a. m. on June 16, and that is exactly the same time and day set for the opening of the bids. These provisions must be construed with reference to one another, and the time and place of opening bids provision implies a time-lag between the opening of the bids and the acceptance of one of them, for price was not the only consideration. A low bidder's financial responsibility and the adequacy of his equipment and personnel to do the job of removal were important factors for consideration in awarding the contract, and some time at least would be required and must have been contemplated in which to investigate these matters. Other provisions of the catalogue give concrete support to this assumption that an interval of time between opening and acceptance must have been in the contemplation of the parties.

Indeed, the very provision with respect to the opening of bids itself permits consideration not only of bids received at the time specified but also of bids "sent in time to be received" at the appointed time. This can only mean that some leeway was given to bidders who sent their bids in season to arrive promptly in the ordinary course of the mails but whose bids were late in coming in because of some unforeseen delay. This clause is obviously pointless if a contract had to be awarded immediately upon the opening of the bids. Furthermore, the Government's reservation of power to reject bids, waive defects in bids, and withdraw lots from sale prior to the acceptance of a bid implies an interval of time between opening and acceptance in which to exercise discretion. And like indications are also to be found in the provision permitting withdrawal of a bid after opening but before acceptance with forfeiture of the amount deposited as security.

Still other provisions of the catalogue give indications of a similar nature. We see no occasion to enumerate them. It will suffice to say that even if there were any ambiguity the defendant was not misled by it for its president's letter of June 27, 1947, quoted earlier in this opinion, shows clearly that at that time he believed the acceptance of the O'Donnell company's bid on June 19 gave rise to a valid contract to purchase and remove the two lots of food refuse described in the catalogue.

■ Our conclusion from the foregoing considerations, and others that we

might mention, is that the correct inference to be drawn from the various terms of the `catalogue construed together is that no definite rigid time was set for the acceptance of bids. Thus the Government had a reasonable time in which to accept, and under the circumstances disclosed it seems evident that three day's delay in acceptance was not unreasonable. It follows that a contract came into existence and the defendant-appellee is liable for breaking it.

The defendant-appellee's contention that even if it is guilty of breach of contract its liability is limited to forfeiture of the $500 deposited as bid security is refuted by the terms of the contract itself and the reasoning of this court in Conti v. United States, 1 Cir., 1946, 158 F.2d 581. We see no reason to discuss this contention further.

The judgment of the District Court is vacated and the case is remanded to that Court for further proceedings consistent with this opinion; the appellant recovers costs on appeal.