GEORGE P. CONVERSE & CO., Inc., and Harry F. Waters

v.

POLAROID CORPORATION and The Dobeckmun Company.

Civ. A. No. 55–565.

United States District Court
D. Massachusetts.

Dec. 29, 1955.

John H. Glaccum, New York City, of counsel, Arthur D. Thomson, Boston, Mass., for plaintiff.

Donald L. Brown, Cambridge, Mass., Ely, Pearne & Gordon, Cleveland, Ohio, Albert L. Ely, Jr., Cleveland, Ohio, of counsel, for defendant and intervenor.

ALDRICH, District Judge.

This is a motion to dismiss filed in a patent case by an intervenor, who, by agreement, stands fully, for this purpose, in the locus of the defendant. The record consists of the pleadings, and certain affidavits and exhibits. The motion is based on intervenor's contention that as matter of law no infringement is shown.

In July, 1936 plaintiff Waters, hereafter called plaintiff, filed an application which on April 7, 1942 resulted in Patent No. 2,278,502 for a waterproof container and package. The history of this application through the patent office is long, and resulted in a voluminous file wrapper. In the course thereof a few, relatively insignificant, changes were made in the specifications, but the original claims were all replaced. All of the original claims referred to a "coated" material, having a "liquid-proof coating." None of the eventual claims used the words "coated" or "coating," but used new words "plural ply," and "inner ply," which were not in any original claim. Intervenor's contention is that its own material is single ply, except for a "coating," and that plaintiff is estopped from asserting infringement by coating. At first blush this contention appears justified.

In examining the specifications I find that it is said that the bag or container can be made from material having a liquidproof coating, or from laminated material one sheet of which is moistureproof. As previously stated, the claims speak only of "plural ply" material, and do not mention coating. The record warrants the finding that intervenor's material, except for what is produced by the coating, is single ply. The liquidproof coating is applied hot, in "semimolten" form, which, I assume for the purposes of this decision, never prior to

application existed as a separate self-supporting sheet or ply. However, after cooling it attains sufficient integrity to be removable from the material to which it has been applied as a separate self-supporting sheet.

 The principle of file wrapper estoppel, well recognized as it is, is to be used with caution. Manifestly an applicant who has given up a claim in order to obtain his patent cannot, under the guise of construction, be permitted to recapture what he has previously surrendered. But every change in language is not necessarily the abandonment of a claim. Changes may be purely formal. Cf. Emerson v. National Cylinder Gas Co., D.C.D.Mass., 135 F.Supp. 268. There may be other reasons. The burden should be on the party asserting the estoppel of establishing its effect and extent. Before considering it I will examine the patent on its face.

Typical excerpts from the specifications are as follows.

"In the packaging of liquids, such as oil, milk, and the like, containers and bags may be used provided the inner surface thereof is coated with some form of a liquidproof coating preferably of the type which may be sealed by the application of heat and pressure, or by the application of heat alone. If desired, instead of using a coated material, a laminated sheet may be used providing that the ply of the sheet which is in contact with the liquid is made of moistureproof material. In my copending application Ser. No. 91,364, filed July 18, 1936, now Patent No. 2,159,835, granted May 23, 1939, I have disclosed one form of coated material, or a laminated material, as for example, a sheet of paper coated with a fluidproof, thermoplastic material, or a sheet of Pliofilm laminated to paper.[1]

\* \* \* \* \* \*

"Since, as is usually the case, but one surface of the material is coated, the seam will be formed by adjoining a coated and a non-coated surface together, thereby setting up the condition above referred to in which there is danger of leakage of the contents of the container through the seam by capillary flow even though the coating itself has not been broken.

\* \* \* \* \* \*

"The bag comprises a front wall 10 and a back wall 11 formed by flattening the tube from which the bag is made. One surface of the material is provided with a liquidproof coating 12 of a thermoplastic character. Although the composition of the coating may vary, it will usually include as one of its ingredients rubber or a compound of rubber. If desired, the waterproofing material may be laminated to the material forming the body of the container."

There are additional specifications of similar import. A typical claim is as follows.

"1. A plural ply open-mouthed bag comprising an inner ply of heat-fusible material and an outer ply of other flexible material, said inner ply having an interior of integral nature with two of its seams formed by fusion, at least one of said fused seams being transverse the bag and being faced on both sides by the outer ply secured thereto."

 In questions of construction the nature of the invention should be considered. In the case of a patent covering a completed product the method of manufacture of the component material

---

1. This last sentence originally read,
 "In my copending application, Serial No. \* \* \*, filed \* \* \*, I have disclosed and claimed several forms of mois-tureproof coatings and laminated materials of the type above described which may be used in the manufacture of liquid type packages."

is normally incidental. Here, it seems arguable, the important question is, does this material consist of two or more sheets or plys at the time it is taken to be made into the bag? I do not believe it can be said as matter of law that material so described as plural ply must have been made up of sheets initially existing separately and independently.[2]

The patent must be looked at as a whole, and the specifications and claims must be read together. The former can be used as an aid in interpreting the latter. National Development Co. v. Lawson-Porter Shoe Machinery Corp., 1 Cir., 129 F.2d 255. When this is done the case, apart from estoppel, is somewhat parallel to Whitin Mach. Works v. Houghton, 1 Cir., 178 F. 444, certiorari denied 217 U.S. 605, 30 S.Ct. 695, 54 L. Ed. 899. There the applicant in his specifications described two equivalent features of his invention, but in the claims mentioned but one. The defendant sought to make out that in such a situation there was a reverse-English upon the doctrine of equivalents, and that the singleness of the claim was a denial of the duality of the specifications. The defendant was unsuccessful in its contention. I believe the case at bar is an even more straightforward matter of interpretation.

The next question is whether, if in such a situation the claims are revised during the Patent Office proceedings to omit the first material, and substitute the second, the patent will still cover the first. Intervenor says that file wrapper estoppel of necessity prevents it. The answer is not that simple; it depends on the circumstances.

Plaintiff's application was initially rejected in toto. He applied for reconsideration and was again rejected. The principal ground was lack of invention, and the principal asserted prior art was Hawley, Patent No. 338,068, issued March 16, 1886. Examination shows that Hawley involved coated seam construction, but in no way concerned a coated as distinguished from a laminated material. While plaintiff and the examiner were both maintaining their respective positions with some persistence (other than the fact that plaintiff abandoned certain claims), one Bergstein applied for a patent for a waterproof container using laminated material, only. Plaintiff asserted an interference, and amended his application by adding claims on "plural ply." The words "plural ply" were Bergstein's. It is quite apparent that plaintiff used them to make the interference clear, and not to meet any objections made by the examiner.[3] Subsequently Bergstein conceded these claims, and plaintiff renewed his request for recognition. The examiner acceded to the new claims, but remained opposed to the old ones. Plaintiff then waived the remaining old claims and accepted the patent on the new claims only.

If the principal difference, or even a necessarily, as distinguished from a debatably, substantial difference between the accepted claims and the original ones was the substitution of "plural ply" and "inner ply" for "coated" and "coating," there would be a foundation for an assertion that all claims for coated material had been abandoned. However, this was not the case. No conduct of the examiner led to such a renunciation. The

2. In this connection it seems not without significance that claim 1 refers simply to plural ply, and claim 2 refers to plural ply with the plys bonded together by an adhesive, seemingly a natural distinction between plys resulting from coating and from lamination.

3. It may be true that after this was done the Examiner ruled in the interference

proceedings that only the new claims created one. Plaintiff took no further action as a consequence of this and thereafter Bergstein abandoned his claims. Whatever took place I do not regard as an integrated act or a sufficient basis for an estoppel. It was no more conclusive than argument. Cf. Keyes Fibre Co. v. Chaplin Corp., D.C.D.Me., 97 F.Supp. 605.

new claims differed from the old in substance, quite apart from the description of the material. Nor did the examiner comment on the language in the specifications which referred to liquidproof coating and clearly equated it with a liquidproof ply, or suggest its modification or removal. He must be presumed to know that the claims and specifications are to be read together, and what this would mean.[4]

The intention of the applicant, as reasonably understood by the examiner, is entitled to great weight. Doble Engineering Co. v. Leeds & Northrup Co., 1 Cir., 134 F.2d 78. "The claims of a patent must always be explained by and read in connection with the specification and *in the light of definitions* and admissions made by the applicant in the proceedings in the Patent Office." Westinghouse Electric Corp. v. Hanovia Chemical & Mfg. Co., 3 Cir., 179 F.2d 293, 296–297. (Italics supplied.) Putting this another way, the patent, including the file, is to be construed by principles applicable to contracts, Doble Engineering Co. v. Leeds & Northrup Co., supra, which means, that "the provisions * * * are not to be construed separately as isolated items but that the parts * * * are to be read together as related elements." United States v. P. J. O'Donnell & Sons, Inc., 1 Cir., 228 F.2d 162. Applying this principle, I find that the words "plural ply" were not intended to negate a coating, or at least a coating which produced a ply, and that the total tenor of the file wrapper tends to confirm, rather than contradict, the interpretation the patent is entitled to on its face.

The motion to dismiss is denied, The parties may have 30 days to answer.

4. Applicant's final act, upon electing to take the patent with all claims reading "plural ply," was to reinsert the sentence to which note 1, supra, is attached, clearly calling attention to the duality of his concept. Indeed, at the very time the "plural ply" claims were originally submitted, he had been abundantly specific. He stated,

"This language it is submitted is entirely consistent with either a coated or laminated sheet."

It is true that the particular language referred to related to seams, but the general intent to cover material manufactured by two methods was manifest.