**MID-WEST WIRE PRODUCTS COMPANY, Plaintiff,**

v.

**WALL TUBE & METAL PRODUCTS CO., Defendant.**

**Civ. A. No. 13231.**

United States District Court
E. D. Michigan, S. D.
May 26, 1958.

William T. Sevald, Royal Oak, Mich., for plaintiff.

Edwin J. Balluff and Charles R. Mc-Kinley, Detroit, Mich., for defendant.

THORNTON, District Judge.

### Findings of Fact

1. Plaintiff, Mid-West Wire Products Company, is a corporation organized and existing under the laws of the State of Michigan, and has its principal place of business at Detroit, Michigan.

2. Defendant, Wall Tube & Metal Products Co., is a corporation organized and existing under the laws of the State of New Jersey, and has its principal place of business at Newport, Tennessee.

3. By its complaint filed February 24, 1954, plaintiff charged defendant with infringement of Geralds patent No. 2,364,705, for "Basket Structure," issued to plaintiff December 12, 1944, as assignee of Geralds, and with unfair competition.

4. This suit arises under the patent statutes of the United States, and the claim of unfair competition is related to the claim of infringement of the Geralds patent in suit.

5. The Geralds patent discloses a basket structure which consists essentially of an upper closed loop frame and a pair of longitudinal supporting runners extending beneath the frame and bent upwardly at their ends to form upward extensions secured to opposite ends of the frame, with the runner extensions projecting upwardly above the frame and terminating in transverse handles. Such basket structures are old in the art as shown in prior art patents such as Insinger No. 928,762 and Hay No. 1,-994,195. However, in the Geralds patent the runner extensions diverge upwardly at each end of the basket so as to be disposed on the outer sides of, or overlap, the runner extensions of a superposed basket of similar construction to perform a stacking function. Geralds forms substantially V-shaped parts in his runner extensions between the frame and the transverse handles, which parts overlap or engage the outer sides of the extensions of the upper basket to prevent relative lateral shifting of the baskets, while the transverse handles of the lower basket extend across the runner extensions of the upper basket to prevent relative longitudinal shifting between the baskets.

6. The defendant's baskets include a closed loop frame and longitudinal supporting runners extending beneath the frame and bent upwardly to form upward extensions secured to opposite ends of the frame, with the extensions projecting upwardly above the frame and terminating in transverse handles. However, all of the defendant's baskets, both the A type and the B type, employ runner extensions which converge upwardly so that the extensions of the lower basket nest inside, or engage the inner sides of, the extensions of the upper basket to prevent relative lateral shifting between two stacked baskets. In the defendant's baskets the extensions or handles of the lower basket engage the body or framework of the upper basket to prevent relative longitudinal shifting between the baskets.

7. Claims Nos. 8, 9, 10 and 12 are charged to be infringed by the defendant's A type baskets, which defendant

began manufacturing in 1950. Claims Nos. 1–4 and 7–12 are charged to be infringed by the defendant's B type baskets, which defendant began manufacturing in 1953.

8. All of the claims of the Geralds patent are limited to a basket in which the runner extensions diverge upwardly or in which the extensions on the lower basket engage the outer sides of the extensions on the upper basket. The plaintiff's expert witness conceded on cross-examination that each claim in suit contains one or more limitations that do not read upon the defendant's baskets, either the A or the B type. The defendant by employing upwardly converging runner extensions does not infringe the claims of the patent in suit.

9. The Geralds patent is a narrow patent in a crowded art. Geralds was not the first to form the runner extensions or handles of a basket so that they would interfit to prevent relative lateral and longitudinal shifting between stacked baskets. Examples of this expedient are shown in prior art patents such as Davis No. 2,223,554, Johnson No. 2,127,999 and Spear No. 1,922,605, all of which disclose upwardly converging handles or parts which interfit with an upper basket to perform a stacking function.

10. The principal difference between the prior art structures and that claimed by Geralds is that Geralds' runner extensions diverge upwardly rather than converge upwardly as in the prior art. Defendant employs the upwardly converging elements of the prior art.

11. In processing the application for the Geralds patent the Patent Office cited a wide selection of prior art patents relating to basket structures for various uses, and applied the combination of Hay No. 1,994,195 and Davis No. 2,223,554 against certain of the application claims.

12. In view of the prior art the claims of the Geralds patent must be strictly construed and cannot be accorded a broad construction or range of equivalents sufficient to support the charge of infringement.

13. Geralds asserted in argument before the Patent Office that the claims in suit were patentable over the prior art because such claims included, among other limitations, upwardly diverging runner extensions, or parts of such extensions of the lower basket overlapping or engaging the outer sides of, or crossing, the runner extensions of an upper basket to prevent relative movement between stacked baskets.

14. Geralds attempted to obtain allowance of broad claims not limited to a construction in which the runner extensions were formed so as to provide a stacking function, but was forced to cancel such broad claims from his application in view of the prior art cited by the Patent Office.

15. During prosecution of his application in the Patent Office, Geralds presented a broad claim (application claim No. 22) which defined the runner extensions as being "non-parallel," which claim was broad enough to cover the converging extensions used by defendant, as well as the diverging extensions shown in the Geralds patent. However, this claim was rejected as unpatentable over the Hay and Davis patents, with Davis showing converging extensions.

16. As a result of the rejection of application claim No. 22, Geralds canceled the claim and accepted issuance of the patent with the claims in suit, which are limited to the diverging extensions shown in the patent.

17. In 1950 plaintiff sold to Ford Motor Company wire stock handling baskets made in accordance with Geralds patent No. 2,364,705.

18. The baskets which plaintiff sold to Ford were provided with the specific handle stacking features forming the essential feature of the Geralds patent. Plaintiff supplied to Ford drawings of such baskets on Ford drawing paper, and the drawings thus supplied became the property of Ford Motor Company.

19. In the fall of 1953, Ford Motor Company solicited competitive bids from plaintiff, defendant, and a third basket

manufacturing concern on a prospective purchase order for designing and fabricating wire stock handling baskets. In soliciting the bids Ford gave such vendors, including defendant, blueprints of baskets supplied to Ford by plaintiff in 1950. Ford also supplied the prospective vendors with parts drawings showing the parts which were to be carried in the baskets.

20. After receiving such drawings or blueprints from Ford, defendant designed, and made its own drawings of, a series of baskets which would meet Ford's requirements as to size, dimensions, parts carrying provisions, and the like but which incorporated handles or handle stacking features of defendant's own design, employing upwardly converging runner extensions, which handle stacking features are not like those found in plaintiff's baskets and are not like the handle stacking features shown in the Geralds patent in suit.

21. Ford Motor Company accepted defendant's bid and issued Purchase Order No. PE 39676M to defendant on January 30, 1954. The baskets supplied by defendant to Ford under such purchase order are among the B type baskets charged to infringe the Geralds patent.

22. Defendant did not copy any drawings or blueprints belonging to plaintiff and did not copy plaintiff's baskets. The drawings made by defendant showing the baskets to be supplied to Ford under the purchase order were required to be submitted to Ford for Ford's approval. Some of the baskets supplied to Ford by defendant are of such a size that they can be interstacked with some of the baskets which plaintiff had previously sold to Ford. Ford Motor Company required that the baskets to be made under said purchase order should be made in specified sizes and dimensions so that such baskets could be interstacked with baskets which Ford already had on hand in its plants. Defendant has not committed any act of contributory infringement by supplying to its customers baskets which will interstack with baskets supplied to such customers by plaintiff.

23. The Court finds that the plaintiff has not proven any act of unfair competition by defendant.

24. At the trial the plaintiff asserted that the defendant had violated a trade secret belonging to plaintiff and in support of such charge put into evidence the transcript of the record in the case of Russell v. Wall Wire Products Company (defendant's predecessor), Chancery No. 492,346 in the Circuit Court for the County of Wayne, State of Michigan. G. L. Russell had been an employee of plaintiff from 1946 until late in 1949 and, upon leaving the plaintiff company, approached defendant in an effort to interest defendant in taking a license under a development of Russell pertaining to wire stock baskets. After the defendant had turned down the offer of a license, Russell filed the Circuit Court suit, alleging violation of his trade secret and unjust enrichment by breach of confidential relations on the part of defendant. After a full trial Russell's complaint was dismissed on the grounds that defendant had not used Russell's trade secret, that the proofs failed to show any unjust enrichment of defendant, and that defendant had not engaged in any unfair competition with Russell. The Michigan Supreme Court affirmed that decision in a unanimous opinion reported at 346 Mich. 581, 78 N.W.2d 149.

25. An examination of the record in the Russell v. Wall Wire suit in the Wayne County Circuit Court, and particularly Russell's testimony, shows that whatever Russell may have disclosed to defendant in 1950 pertained to Russell's own invention or development, and not to any trade secret of the plaintiff in the present suit. Moreover, the record does not disclose that defendant had any obligation to or confidential relationship with the present plaintiff with respect to anything disclosed by Russell to defendant.

26. The Court finds that the evidence submitted by plaintiff fails to disclose

any trade secret owned by the plaintiff which has been appropriated by defendant.

### Conclusions of Law

 1. All of the claims of the Geralds patent define a basket having upwardly diverging runner extensions, or a basket in which the extensions on the lower basket engage the outer sides of the extensions on the upper basket. Since that is the construction which distinguishes Geralds' basket from the prior art, the claims must be limited to that specific structure.

 2. Plaintiff having chosen during the prosecution of his application in the Patent Office, presumably in the interest of a finding of validity, to limit his claims, may not now enlarge for purposes of infringement. Friedlander v. Union, D.C., 150 F.Supp. 849, 851; Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736; Dillon Pulley Co. v. McEachran, 6 Cir., 69 F.2d 144; Midland Steel Products Co. v. Clark Equipment Co., 6 Cir., 174 F.2d 541.

3. The plaintiff has failed to sustain its burden of proving infringement by a preponderance of the evidence.

4. The defendant has proven facts establishing the existence of file wrapper estoppel which estops plaintiff from asserting an interpretation of the patent claims broad enough to cover the converging extensions in the A and B type baskets of defendant.

5. Since file wrapper estoppel has been proven in this case, the claims may not be broadened by application of the doctrine of equivalents in order to find infringement.

6. The Court concludes that the evidence submitted by the defendant is not sufficient to establish that the patent, when properly limited, is invalid beyond a reasonable doubt.

7. If the claims of the Geralds patent are broadly construed so as to be infringed by any of defendant's baskets, then the Court would find that the patent is invalid over the prior art.

8. The plaintiff has failed to prove its claim of unfair competition or unjust enrichment on the part of the defendant.

9. The plaintiff has failed to prove its claim that defendant violated any trade secret owned by plaintiff.