**PAPER MATE MANUFACTURING COMPANY and the Paper Mate Company, Plaintiffs,**

v.

**W. A. SHEAFFER PEN COMPANY, Defendant.**

**Civ. No. 3–624–D.**

United States District Court
S. D. Iowa,
Davenport Division.

March 17, 1965.

As Amended March 18, 1965.

Sherwin J. Markman, Des Moines, Iowa, Henry R. Ashton and Henry J. Zafian, New York City, Philip Colman, Boston, Mass., for plaintiffs.

E. H. Pollard, Fort Madison, Iowa, Fred T. Williams, Thomas E. Smith, Chicago, Ill., for defendant.

STEPHENSON, Chief Judge.

This matter is now before the Court upon plaintiff's motion for summary judgment of non-infringement of Henriksen Patent No. 2,678,634, entitled "Writing Instruments," issued May 18, 1954. Appropriate briefs and supporting documents have been filed by both parties and a hearing upon plaintiff's motion has been held.[1]

The defendant, W. A. Sheaffer Pen Company, secured a license for the Henriksen patent from the inventor Ernst Johan Jens Henriksen and it is not disputed that all acts of Henriksen concerning the patent in suit run to and are binding upon the licensee Sheaffer.

The controversy concerns what is described in the record as the "follower" or "follower mass." In the writing instrument described in the patent the diameter of the ink reservoir is such that if the pen is inverted, the ink runs out of the reservoir and out of the pen. To prevent this a follower is inserted in the reservoir on the upper surface of the ink. The follower also serves an additional purpose in that it protects the ink from the air. The follower neces-

1. The present action was originally brought by the plaintiffs, Paper Mate Manufacturing Company and The Paper Mate Company (hereinafter referred to as plaintiff) for a declaratory judgment that the Henriksen patent (under exclusive license to defendant, Sheaffer Pen Co.) is invalid, not infringed, and unenforceable. The defendant, W. A. Sheaffer Pen Company, counterclaims for alleged infringement of the Henriksen patent. The action is non-jury. Jurisdiction is conferred by 28 U.S.C. §§ 1338, 1391, 2201 and 2202.

sarily must be of a substance other than ink and of such a nature that it will not mix with ink.

Both the plaintiff and defendant manufacture and sell writing instruments commonly known as ball point pens, with ink reservoirs and followers. However, plaintiff claims that its follower is of a composition not within the scope of the patent in suit of which the plaintiff is licensee. Specifically plaintiff claims that it uses a follower composed of a greasy substance known by the trade name of "Plastilube O" and that the defendant has no claim for infringement because the file wrapper of the patent in issue reveals that greasy substances as a follower component were abandoned by Henriksen in the proceedings in the Patent Office prior to the issuance of the patent.

Plaintiff relies upon the principal of file wrapper estoppel, a recognized legal doctrine which in the proper circumstances, prevents a patentee who chooses, during the course of the prosecution of his application, to limit his claims, to later enlarge the scope of the patent issued to include that which was given up.[2] In other words, where file wrapper estoppel is applicable, claims in patent are properly read and interpreted in light of not only what was allowed, but also in light of any claims that were rejected or withdrawn.[3]

The pertinent parts of the file wrapper upon which plaintiff relies are claims 28, 29 and 30 which were entered some two years after the original application was filed. Claim 28 described the follower as being a "viscous mass";[4] claim 29 described it as being "a layer of a greasy substance";[5] and claim 30 described it as "a layer of a pulpy mass."[6] In filing the three additional claims Henriksen stated that "claim 28 is further indicative of the particular species of the invention as now elected. Claims 29 and 30 are directed to the species of a greasy substance and pulpy mass, respectively, as species to which claim 28 is generic."[7] In the same amendment he went on to state that in the event his "viscous" claim was not allowable, he elected the "pulpy" species saying: "Applicant further elects as a single species for the lid a lid of pulpy mass in the event that no generic claim should be found allowable."[8]

Previously, at the time when the Patent Office rejected the original application, which covered followers generally, the Patent Office cited Rule 41 [apparently Rule 141] to Henriksen which requires a party presenting a generic claim, in the event the generic claim is not allowed, to elect one of the species thereof if he wishes the Patent Office to further consider his application.[9] Claims 28, 29 and 30 were then presented in accordance with the requirements of Rule 41.

Thereafter acting upon claims 28, 29 and 30, the examiner rejected number

---

2. L. S. Donaldson Co. v. La Maur, Inc., 299 F.2d 412 (8th Cir. 1962); cert. denied, 371 U.S. 815, 83 S.Ct. 27, 9 L.Ed.2d 57 (1962); Mid-West Wire Products Co. v. Wall Tube & Metal Products Co., 164 F.Supp. 599 (E.D.Mich.1958), aff'd, 266 F.2d 345 (6th Cir. 1958).

3. Ibid.

4. Exhibit 2 to Zafian affidavit, page 27.

5. Ibid.

6. Ibid.

7. Id. at 29.

8. Ibid.

9. Id. at 24, 25. "41. [Apparently Rule 141] Two or more independent inventions cannot be claimed in one application; but where several distinct inventions are dependent upon each other and mutually contribute to produce a single result they may be claimed in one application: *Provided*, That more than one species of an invention, not to exceed three, may be claimed in one application if that application also includes an allowable claim generic to all the claimed species. In the first action on an application containing a generic claim or claims and claims to more than one species thereunder the examiner, if he is of the opinion after a complete search that no generic claim presented is allowable, shall require the applicant in his response to that action to elect that species of his invention to which his claim shall be restricted if no generic claim is finally held allowable."

28 as unpatentable for lack of invention over prior art and inoperative for all practical purposes. He went on to state in his report: "Claim 29, specific to grease, and claim 30, specific to pulp, are rejected for reasons applied to claim 28." [10] Amendments were submitted by Henriksen, but all three pertinent claims were again rejected by the examiner who cited a specific patent (The Martin Patent) as prior art.[11]

In the sequence of events after the second rejection of 28, 29 and 30 Henriksen cancelled all prior claims and presented claim 31 wherein the follower was described as a "substantially viscous pulpy mass." [12] (The specific word "greasy" was not used). In support of his new claim he stated: "As soon as this claim is considered allowable, applicant will in accordance with his election made, change Fig. 2 to show a follower of pulpy mass for the follower 6 as now indicated in Fig. 2." [13] The examiner disallowed claim 31, but Henriksen appealed to the Board of Appeals, which reversed the examiner and allowed the claim.[14] On May 18, 1954, Henriksen was granted the patent in issue.

In substance plaintiff contends that this Court should enter summary judgment of non-infringement of the patent in issue because the official file wrapper record of said patent estops defendant from now claiming that greasy followers such as those used in plaintiff's pens come within the claims of the patent, all of which are restricted to pulpy followers. On the other hand, defendant contends that the claims of the patent recite the follower material as a viscous or flow-resistant pulpy mass which includes substances that are both greasy and pulpy.

Plaintiff urges more specifically that defendant, having designated "greasy" and "pulpy" as independent species and then having abandoned "greasy", is now estopped from claiming that "pulpy" includes greasy. Defendant urges that no such estoppel exists and that defendant should be granted the opportunity of submitting evidence as to the meaning of the words of art now in controversy. For the purpose of this motion it is conceded that plaintiff's follower is composed of a greasy substance. The issue as to whether it is pulpy, is claimed by plaintiff to be immaterial.

In support of its motion, plaintiff relies on Henriksen and W. A. Sheaffer Pen Co. v. Cory Corp., 327 F.2d 409 (7th Cir. 1964); cert. denied, 379 U.S. 820, 85 S.Ct. 40, 13 L.Ed.2d 31. In the foregoing case the Court of Appeals for the Seventh Circuit held that on the basis of the file wrapper (same as the one now before the Court) " * * * Henriksen clearly abandoned a 'greasy' follower and limited his patent to the 'elected species' where the follower is 'pulpy'," supra at 412. The Court reversed the district court's finding of infringement which included findings "which state or imply that grease may be considered as a pulpy mass," supra at 412. The Circuit Court held there was no infringement due to file wrapper estoppel.

The decision of the Court of Appeals for the Seventh Circuit is entitled to respect and is not to be brushed aside lightly, but it is not binding on this Court nor upon the defendant in the present case. It is for this Court, upon the record now before it, to decide whether summary judgment should be granted.[15]

It is the view of this Court that the question of abandonment by Henriksen of followers composed of a greasy substance should not be determined on the basis of the record now

10. Exhibits to Zafian Affidavit, page 31.

11. Id. p. 39.

12. Id. pp. 40, 41.

13. Id. p. 42.

14. The basis for reversal was that the Martin Patent, relied on by the examiner

as prior art, was a capillary pen, whereas Henriksen's patent had a large reservoir which fed the ball of the pen by gravitation. (Id. page 76.)

15. John Deere Co. of Kansas City v. Graham, 333 F.2d 529 (8th Cir. 1964).

before the Court. Abandonment is not to be presumed but must be clearly evidenced.[16] Summary judgment is an extreme remedy and should be granted only in the absence of a genuine material fact issue.[17] The issue of infringement cannot be disposed of without the factual determination of the meaning of the word "pulpy" in the claims of the patent. In view of the dispute between the parties this issue can better be determined after a hearing.[18]

The motion for summary judgment is denied.

## ORDER

The Court finds that the Memorandum and Order entered March 17, 1965, should be amended by adding the following:

It is further ordered that pursuant to Title 28, Section 1292(b) the Court finds the foregoing order denying the Motion for Summary Judgment involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

---

16. Drum v. Turner, 219 Fed. 188, 193 (8th Cir. 1914).

17. United States v. Farmers Mut. Ins. Assoc., 288 F.2d 560 (8th Cir. 1961).

18. Rohm & Haas Co. v. Permutit Co., 130 F.Supp. 260 (D.Del.1955); George P. Converse & Co. v. Polaroid Corp., 136 F. Supp. 912 (D.Mass.1955).